## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG

**I. KIPLAGAT KEMBOI and**
**REBECCA KIPLAGAT,**

                    Plaintiffs,

**v.**                                                    **Civil Action Nos. 3:11-CV-36(L)**
                                                                              **3:11-CV-37**
                                                         **(GROH)**

**OCWEN LOAN SERVICING, LLC, et al.**

                    Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are defendants Daniel J. Mancini's and Mancini &

Associates' Motion to Dismiss [Doc. 81] and Motion for Summary Judgment [Doc. 92], filed

March 23, 2012, and April 9, 2012, respectively; plaintiffs I. Kiplagat Kemboi's and Rebecca

Kiplagat's Motion for Partial Summary Judgment on the Issue of Defendant Mancini's

Status as a Debt Collector [Doc. 94] and Motion for Partial Summary Judgment [Doc. 101],

filed April 9, 2012, and April 16, 2012, respectively; and defendant Ocwen Loan Servicing,

LLC's Motion for Summary [Doc. 99], filed April 16, 2012.  Also pending before the Court,

and relevant to the disposition of these motions, is the plaintiffs' Motion in Limine to Exclude

Comment Logs of Prior Loan Servicer [Doc. 97] and Motion to Strike Declaration of Karen

Stacey [Doc. 104], filed April 16, 2012, and April 23, 2012, respectively.  These motions

have since been briefed and are now ripe for decision.  Having reviewed the record and

considered the arguments of the parties, this Court concludes that  the Mancini motion for

summary judgment should be **GRANTED**, while the corresponding motion to dismiss

should be **DENIED AS MOOT**, and the remaining above motions should be **DENIED**.

**I.     Undisputed Material Facts**

Pursuant to an Adjustable Rate Note dated July 31, 2003, plaintiffs I. Kiplagat Kemboi and then-wife Rebecca Kiplagat promised to pay New Century Mortgage Corporation ("New Century") $119,000 not later than September 1, 2033, in return for a loan on their Martinsburg, West Virginia, home.  Specifically, the plaintiffs promised to pay a monthly principal and interest payment of $1,000.62, beginning on October 1, 2003, at an adjustable interest rate of 9.5%.  To secure their promise to pay, the plaintiffs granted New Century a security interest in their home pursuant to a Deed of Trust dated July 31, 2003.  Effective December 2, 2003, New Century transferred its servicing rights on the plaintiffs' loan to Barclays Capital Real Estate, Inc., d/b/a HomEq Servicing ("HomEq").

In February 2006, Mr. Kemboi petitioned the Family Court of Berkeley County, West Virginia, for a divorce from Ms. Kiplagat.  The plaintiffs entered into a written settlement agreement on July 25, 2006, which the family court approved by Final Divorce Decree dated August 14, 2006.  Pursuant to the settlement agreement, the family court ordered as follows with regard to the plaintiffs' former marital home:

> That [Mr. Kemboi] shall execute and acknowledge a deed conveying his interest in the former marital home to [Ms. Kiplagat] on the following conditions: that [Ms. Kiplagat] shall refinance the debt on the former marital home within 90 days from the date of the parties' executed Settlement Agreement, and shall pay the debt on the following: two Providian credit cards, Direct Merchant card, Chase card, AT&T card, Cingular Wireless bill, and pay to [Mr. Kemboi] the sum of $31,500.00.  That if [Ms. Kiplagat] cannot fulfill any of these terms, then [Mr. Kemboi] may exercise the option to purchase [Ms. Kiplagat's] interest in the former marital home under the same

2

terms. Further, if neither party chooses to purchase the other's interest in the home, the home shall be sold, and upon payment of the above mentioned credit card debt, the net proceeds shall be divided equally between the parties.

That [Mr. Kemboi] shall vacate the former marital home at the time [Ms. Kiplagat] purchases his interest or within three (3) months, whichever is earlier, unless [Ms. Kiplagat] is unable to refinance the home and [Mr. Kemboi] may exercise his option to purchase the home, at which time [Ms. Kiplagat] shall vacate the home.

That until the former marital home is sold, the parties shall equally divide payment of the mortgage, utilities and minimum credit card debt.

(Final Divorce Decree at ¶¶ 18-20).

Neither Mr. Kemboi nor Ms. Kiplagat exercised the option to purchase the other's interest in the former marital home, which also was not sold. Instead, at the beginning of 2007, Ms. Kiplagat vacated the home and since has not contributed to the payment of the mortgage.

Mr. Kemboi thereafter fell behind on payments and defaulted on the loan. From September 17, 2007, to March 1, 2010, HomEq sent the plaintiffs nineteen (19) notice of default letters. In the March 1, 2010, letter, HomEq notified the plaintiffs that $2,434.58 was required to reinstate their loan. A week later on March 8, 2010, Mr. Kemboi sought a loan modification by completing and sending to HomEq a document titled "Home Affordable Modification Program Hardship Affidavit." Mr. Kemboi wrote "Divorced. Moved out 1-1-2007" where the document requested the signature of the co-borrower. Among other

supporting documentation, Mr. Kemboi enclosed a copy of the Final Divorce Decree.

By letter dated March 29, 2010, and addressed to Mr. Kemboi and Ms. Kiplagat, HomEq offered the plaintiffs a loan modification. In an enclosed Modification Agreement which purported to be between HomEq and "I KIPLAGAT KEMBOI and REBECCA KIPLAGAT," HomEq offered to: (1) adjust the unpaid principal balance upward by $2,377.83 "to reflect the amount of unpaid interest, late charges, fees and costs, estimated deposits and/or advances for unpaid property taxes and/or insurance premiums (if applicable), less any amounts forgiven or deferred;" (2) lower the interest rate from 9.5% to 6.75% for five years; and (3) lower the monthly principal and interest payment from $1,000.62 to $818.92 beginning with the payment due on April 1, 2010. The escrow payment for insurance and taxes would remain $196.13, for a total monthly payment of $1,015.05. The proposed Modification Agreement contained a signature line for Mr. Kemboi and a signature line for Ms. Kiplagat. Ms. Kipligat having refused to sign the agreement because she "was not in the house," Mr. Kemboi signed his name, wrote "Divorced" on the signature line for Ms. Kiplagat, and returned the document to HomEq on April 12, 2010. On April 14, 2010, HomEq's vice president signed the Modification Agreement directly under the signature line for Ms. Kiplagat. HomEq did not return a copy of the Modification Agreement signed by its vice president.

Mr. Kemboi made payments at the lower modified amount on April 12, 2010, April 30, 2010, May 28, 2010, July 2, 2010, and August 6, 2010. HomEq accepted, and did not return, these five payments. However, by letter dated August 16, 2010, HomEq claimed that the plaintiffs were in default in the amount of $3,373.18. In the meantime, by letter dated August 11, 2010, HomEq notified the plaintiffs that effective August 31, 2010, it

4

would transfer the servicing of their account to Ocwen Loan Servicing, LLC ("Ocwen").  On September 1, 2010, New Century assigned the plaintiffs' deed of trust to Deutsche Bank National Trust Company, as Trustee for the Pooling and Servicing Agreement Dated January 1, 2004, Morgan Stanley ABS Capital I Inc., Trust 2004-NCI Mortgage Pass-Through Certificates, Series 2004 NC1.

By letter dated September 13, 2010, Ocwen informed the plaintiffs that it considered their loan to be delinquent.  Thereafter, Mr. Kemboi called Ocwen to dispute its claim of delinquency.  On September 20, 2010, upon the request of an Ocwen representative, Mr. Kemboi faxed Ocwen a copy of the March 29, 2010, letter from HomEq as well as a completely unsigned copy of the Modification Agreement.  Nevertheless, on September 29, 2010, Ocwen sent the plaintiffs a notice of default letter demanding $3,557.92 to reinstate the loan.  By letter dated October 8, 2010, Mr. Kemboi again wrote to Ocwen, identifying the dates he made the five modified payments to HomEq as well as indicating that he made payments in the same amount to Ocwen on September 3, 2010, and October 1, 2010.  In maintaining its claim of delinquency, Ocwen explained in a letter dated December 9, 2010, that, "A further review of the prior servicer records indicates that your request for modification was denied and the denial letter was also sent to your attention on July 22, 2010."  The plaintiffs deny receiving, and Ocwen has been unable to locate, any denial letter dated July 22, 2010.  Ocwen began refusing to accept Mr. Kemboi's monthly payments in November 2010, returning the payments to MoneyGram Express.  As of October 1, 2010, Ocwen began assessing a $15.00 per month late charge against the plaintiffs.

On February 15, 2011, Daniel Mancini from the Monaca, Pennsylvania, law firm of Mancini & Associates (collectively "Mancini") sent each plaintiff a letter titled "Notice Of Substitute Trustee Commencement Of Foreclosure Proceedings And Providing Contact Information Of Loan Servicer For Possibility of Resolution." The letters, which Mancini signed as "Agent for the Substitute Trustees," notified the plaintiffs that "Connie Kesner, Tressia Blevins, and Emmanuel B. Loucas, pursuant to [the] Deed of Trust, have been substituted as Trustees by the current beneficiary and are in the process of setting a sale date for a Trustee sale." The letters also informed the plaintiffs that they would "soon be receiving an official notice of that sale which is in compliance with West Virginia Law and the provisions of the Deed of Trust." The plaintiffs thereafter each received a letter from Mancini dated February 23, 2011, informing them that their home had been scheduled for a foreclosure sale on March 18, 2011. These letters concluded in bold, "This is an attempt to collect a debt and any information obtained will be used for that purpose." Mr. Kemboi immediately responded by letter dated February 23, 2011, detailing the payments he had made and enclosing a copy of the Modification Agreement. Upon receipt of Mr. Kemboi's letter, Mancini contacted Ocwen to inform the servicer of Mr. Kemboi's contention that there was no default to prompt a foreclosure sale. The foreclosure sale was subsequently postponed in light of this litigation.

In July 2011, Mr. Kemboi applied for student loan for two of his children. By letters dated August 9, 2011, and November 9, 2011, Mr. Kemboi was notified that his applications had been denied, stating as the reason for denial: "Presently 90 or more days delinquent." The letters further stated that the information regarding his credit status was obtained from Equifax Info Services, LLC ("Equifax"). The only account shown as delinquent on the

Equifax credit report for Mr. Kemboi is for the home mortgage now being serviced by Ocwen.

## II.     Disputed Facts

According to HomEq comment logs obtained by Ocwen, HomEq rejected the loan modification because Mr. Kemboi failed to obtain the signature of Ms. Kiplagat. Less than a week after HomEq's vice president signed the Modification Agreement, a HomEq customer service representative commented on April 20, 2010, that the plaintiff's account was ready for maintenance in connection with a modification.  Then, on April 29, 2010, the same customer service representative entered a comment stating that "MOD REJECTED SINCE ONLY B1 SIGNED MON. DIV. DOCS REQUIRED."  On April 30, 2010, a HomEq delinquency representative commented that "only one borrower signed mod agreement– nd new one asap– was rejected– nd DIVRC docs."  The same day, a HomEq loss mitigation representative entered a comment that "MOD REJECTED SINCE ONLY B1 SIGNED MON."  On May 3, 2010, and June 2, 2010, the same HomEq delinquency representative repeated the comment made on April 30, 2010.  On June 23, 2010, another HomEq delinquency representative commented that "MOD RJCTD –nd bth brrwrs to sign w/ wet sig or need divrce decree shw b1 awrded hme-mm lmrc."  The same day, a HomEq loss mitigation representative entered a nearly identical comment.

On July 23, 2010, a HomEq delinquency representative entered the comment "07/22/2010 MDENY Modification Denial Letter has been imaged."  On August 11, 2010, five days before HomEq's August 16, 2010, notice of default letter, a HomEq customer service representative noted, "ACCOUNT MAINTENANCE ARM AUDIT COMPLETE." On August 17, 2010, a HomEq representative made a "1 LETTER HISTO" type entry

commenting, "BREACH WEST VIRGINIA 08/16/10." This was the same entry, but for the date, used to record fourteen of the other nineteen notice of default letters HomEq had previously sent to the plaintiffs.

### III.  Procedural History

On March 16, 2011, the plaintiffs commenced this action in the Circuit Court of Berkeley County, West Virginia, against Ocwen and Mancini. The original Complaint [Doc. 2-2] contained claims for breach of contract, violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA") and the Fair Debt Collection Practices Act ("FDCPA"), and an injunction enjoining the foreclosure sale.

On April 29, 2011, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity and federal question jurisdiction [Doc. 1]. On July 5, 2011, Ocwen disclosed a copy of the Modification Agreement signed by its vice president. On August 3, 2011, Ocwen sent the plaintiffs a letter informing them that their interest rate would increase on September 1, 2011. Since then, the plaintiffs have twice amended their Complaint. The Second Amended Complaint [Doc. 71] contains fourteen causes of action.

Count I is a breach of contract claim directed against Ocwen based upon its failure to honor the Modification Agreement allegedly reached with HomEq. Count II asserts that Ocwen's failure to honor the Modification Agreement also constitutes an unfair and deceptive trade practice prohibited by the WVCCPA. Count III alleges that Ocwen breached the Paragraph 3(A) of the Adjustable Rate Note by failing to apply Mr. Kemboi's modified monthly payments. Count IV claims that Ocwen's use of Paragraph 1 of the Deed of Trust in conflict with Paragraph 3(A) of the Adjustable Rate Note to refuse to accept Mr.

Kemboi's modified monthly payments constitutes an unfair and deceptive trade practice prohibited by the WVCCPA. Count V asserts that Ocwen's failure to apply Mr. Kemboi's modified monthly payments and assessment of related charges constitute unfair and deceptive trade practices prohibited by the WVCCPA. Counts VI and VIII allege that each of Ocwen's attempts to collect on the plaintiffs' debt despite the Modification Agreement constitutes an unfair debt collection practice prohibited by the WVCCPA and the FDCPA, respectively. Counts VII and IX assert that each of the Mancini letters also constitutes an unfair debt collection practice prohibited by the WVCCPA and the FDCPA, respectively. Count X seeks an injunction enjoining the foreclosure sale of the plaintiffs' home. Count XI alleges that Ocwen's failure to honor the Modification Agreement was also a breach of the duty of good faith and fair dealing implied therein. Count XII is a claim for defamation against Ocwen for allegedly making false representations to credit reporting agencies that the plaintiffs were delinquent on their loan. Count XIII asserts that Ocwen's failure to properly investigate the plaintiff's account after Mr. Kemboi provided it with the Modification Agreement constitutes a violation of the Real Estate Settlement Practices Act ("RESPA"). Count XIV asks this Court to require Ocwen to specifically perform the Modification Agreement.

On March 23, 2012, Mancini filed the instant Motion to Dismiss [Doc. 81] arguing that Counts VII and IX fail to state viable claims against him because a trustee does not have a duty to consider objections to a foreclosure sale. Discovery closed on March 30, 2011. See Doc. 58. On April 9, 2012, Mancini filed the instant Motion for Summary Judgment [Doc. 92] contending that the plaintiffs have failed to present a genuine issue of material fact that he acted as a debt collector to which the WVCCPA and the FDCPA apply.

On the same day, the plaintiffs filed the instant Motion for Partial Summary Judgment [Doc. 94] asking to the Court to find that Mancini acted as a debt collector.

On April 16, 2012, Ocwen filed the instant Motion for Summary Judgment [Doc. 99] arguing that the plaintiffs cannot establish the existence of an enforceable loan modification agreement, precluding recovery on all of their claims against it.  In support of its motion, Ocwen attaches a declaration of Karen Stacey, a paralegal for Barclays Capital Real Estate, Inc., which formerly did business as HomEq, to authenticate the HomEq comment logs described above.

On April 16, 2012, the plaintiffs filed the instant Motion for Partial Summary Judgment [Doc. 101] asking for summary judgment on their claims against Ocwen for breach of the Modification Agreement (Count I), violations of the WVCCPA (Counts II and VI) and FDCPA (Count VIII), breach of the duty of good faith and fair dealing implied in the Modification Agreement (Count XI), and specific performance of the Modification Agreement (Count XIV).  As support for their motion, the plaintiffs argue that they are entitled to summary judgment on these claims because the record evidence demonstrates that HomEq accepted the Modification Agreement without requiring the signature of Ms. Kiplagat.  In addition, the plaintiffs challenge the admissibility of the HomEq comment logs. On April 16, 2012, the plaintiffs filed the instant Motion in Limine to Exclude Comment Logs of Prior Loan Servicer [Doc. 97] arguing that Ocwen cannot satisfy the requirements of the so-called business records exception to the rule against hearsay.  On April 23, 2012, the plaintiffs filed the instant Motion to Strike Declaration of Karen Stacey [Doc. 104] asserting that Ocwen failed to identify Ms. Stacey in its initial disclosures.

A pretrial trial conference is currently scheduled for July 16, 2012, to be followed by a jury trial on July 24, 2012.

## DISCUSSION

## I.    Applicable Standard

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See **Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979).   A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party.  ***Anderson***, 477 U.S. at 255.  The moving party has the burden to show an absence of evidence to support the nonmoving party's case. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986).   The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. ***Anderson***, 477 U.S. at 248.  A mere scintilla of evidence supporting the case is insufficient.  ***Id.*** at 252.

## II.   Analysis

### A.    Plaintiffs' Motions Challenging Admissibility of Comment Logs

As an initial matter, this Court finds it appropriate to determine the landscape of the record evidence on which the pending motions for summary judgment will be decided.  As

such, this Court will first address the plaintiffs' motions challenging the admissibility of the HomEq comment logs.

### 1.    Business Records Exception

The plaintiffs contend that Ocwen cannot satisfy the requirements of the business records exception to support the admissibility of the comment logs.  This Court disagrees.

As a record of an act or event, the HomEq comment logs should not be excluded as hearsay if Ocwen can satisfy the following five requirements in Federal Rule of Evidence 803(6):

> (A) the record was made at or near the time by– or from information transmitted by– someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Here, there can be no question that the content of the declaration of Karen Stacy which Ocwen has attached to its motion for summary judgment suffices to satisfy the three substantive requirements of Rule 803(6) at this stage.  Specifically, Ms. Stacy states that the comment logs were "recorded by individuals with personal knowledge at or near the time of the events in the ordinary course of the business of servicing loans at HomEq Servicing" and "maintained in the ordinary course of business at HomeEq Servicing."

([Doc. 99-3] at ¶¶ 3-4).

Instead, the plaintiffs argue that Ms. Stacy is not qualified to testify concerning these substantive requirements, or should not be permitted to testify because she was not identified in Ocwen's initial disclosures made pursuant to Federal Rule of Civil Procedure 26(a)(1). This Court disagrees.

First, Ms. Stacy is qualified to testify at this stage pursuant to Federal Rule of Civil Procedure 56(c)(4), which requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In particular, Ms. Stacy states that she is "a paralegal for Barclays Real Estate, Inc., which formerly did business as HomEq Servicing," that she is "familiar with the business practices and records of HomEq Servicing," and that she has "reviewed those records which HomEq maintained in the regular course of its business." ([Doc. 99-3] at ¶ 1). Second, this Court is unconvinced that Ocwen deliberately withheld the identity of Ms. Stacy in violation of Rule 26(a)(1).

## 2. Reliability

In the alternative, the plaintiffs argue that the comment logs should be excluded as are unreliable for two reasons: (1) a March 29, 2010, entry states that HomEq sent the plaintiffs a modification denial letter when the record shows that HomEq instead offered the plaintiffs the Modification Agreement on that date; and (2) a July 23, 2010, entry states that HomEq "imaged" a July 22, 2010, modification denial letter, when the plaintiffs deny receiving, and Ocwen has been unable to locate, any letter dated July 22, 2010. This Court disagrees.

13

First, that the plaintiffs deny receiving, and Ocwen has been unable to locate, a July 22, 2010, denial letter does not mean that the comment logs are inaccurate in stating that such a letter was "imaged" in the system. Second, that the comment logs are inaccurate in stating that a denial letter was sent to the plaintiffs on March 29, 2010, does necessarily require a finding that the comment logs as a whole are insufficiently reliable. As noted previously, the comment logs accurately recorded fourteen of the notice of default letters HomEq sent to the plaintiffs between September 2007 and March 2010. Thus, the inaccurate March 29, 2010, entry goes more properly to the weight of the comment logs than their admissibility.

For these reasons, this Court concludes that the plaintiffs' motions challenging the admissibility of the comment logs should be **DENIED**. Accordingly, the Court will consider the comment logs in deciding the motions below.

## B. Ocwen's Motion for Summary Judgment

Ocwen moves for summary judgment on all of the plaintiffs' claims, presenting two bases in support of its motion. First, Ocwen argues that the plaintiffs have failed to present a genuine issue of material fact that the HomEq Modification Agreement is valid. Second, with regard to the claims concerning its return of Mr. Kemboi's modified payments, Ocwen argues that it is not liable under the Deed of Trust or the Adjustable Rate Nate because it is not a party to either agreement. The Court will consider each argument in turn.

### 1. Valid Modification Agreement

Ocwen argues that the HomEq Modification Agreement is invalid because the undisputed facts establish that the plaintiffs could only have properly accepted the proposed agreement by including both of their signatures. This Court disagrees.

14

In West Virginia, "[t]he fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent.  There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement."  Syl. pt. 2, ***Go-Mart, Inc. v. Olson***, 198 W.Va. 559, 482 S.E.2d 176 (1996) (citing Syl. pt. 5, ***Virginian Export Coal Co. v. Rowland Land Co.***, 100 W.Va. 559, 131 S.E. 253 (1926)).  "A modification of a contract requires the assent of both parties to the contract and mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract."  Syl. pt. 2, ***Wheeling Downs Racing Ass'n v. W. Virginia Sportservice, Inc.***, 157 W.Va. 93, 199 S.E.2d 308 (1973). "In order for mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other.  Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract."  ***Bailey v. Sewell Coal Co.***, 190 W.Va. 138, 140-141, 437 S.E.2d 448, 450-451 (1993).  While this mutual assent is generally manifested by the signature of all parties, one party may waive such execution by all other parties by accepting performance or by otherwise indicating that the signature of all parties is not a prerequisite to a valid contract.  *See* ***Herndon v. Meadows***, 86 W.Va. 499, 103 S.E. 404 (1920); ***Ely v. Phillips***, 89 W.Va. 580, 109 S.E. 808 (1921).

Applying this law, at least two pieces of undisputed evidence preclude summary judgment in favor of Ocwen.  First, though Mr. Kemboi had previously supplied HomEq with a copy of the Final Divorce Decree showing that he was not awarded sole interest in the marital home, HomEq's vice president nevertheless signed the Modification Agreement directly under the signature line for Ms. Kiplagat which read "Divorced."  Second, HomEq

15

then proceeded to accept five monthly payments from Mr. Kemboi at the modified amount. Based upon these undisputed facts, a reasonable juror could conclude that HomEq did not require the signature of Ms. Kiplagat to modify their loan and thus that Mr. Kemboi and HomEq entered into a valid loan modification. Accordingly, this Court concludes that Ocwen is not entitled to summary judgment.

### 2. Liability under Deed of Trust and Adjustable Rate Note

Ocwen argues that it is not liable under the Deed of Trust or the Adjustable Rate Note for its return of Mr. Kemboi's modified monthly payments because the undisputed facts demonstrate that it is not a party to either agreement, that it merely services the loan for the current holder, and that it did not become liable by accepting servicing rights from HomEq. This Court disagrees.

"Ordinarily the assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes." *Lightner v. Lightner*, 146 W.Va. 1024, 1034, 124 S.E.2d 355, 362 (1962). However, this maxim is not without qualification. Section 328 of the Restatement of Contracts (Second) provides:

> (1) Unless the language or the circumstances indicate the contrary, as in assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and *a delegation of his unperformed duties under the contract.*

> (2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and *the obligor of the assigned rights is an intended beneficiary of the promise.*

16

RESTATEMENT (SECOND) OF CONTRACTS § 328 (emphasis added).

Applying this law, at least five pieces of uncontroverted evidence preclude summary judgment in favor of Ocwen. First, in an August 11, 2010, letter, HomEq notified the plaintiffs that effective August 31, 2010, it would "transfer the servicing" of their account to Ocwen. Second, when asked whether Ocwen "purchased" the rights to the plaintiffs' loan, Ocwen's Rule 30(b)(6) representative answered in the affirmative. Third, Paragraph 20 of the Deed of Trust provides, "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Fourth, Paragraph 3(A) of the Adjustable Rate Note states, "Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal." Fifth, Paragraph 3 of the Modification Agreement left these provisions of the Deed of Trust and Adjustable Rate Note unchanged. Based upon these undisputed facts, a reasonable juror could conclude that Ocwen could is liable under the Deed of Trust and the Adjustable Rate Note for its return of Mr. Kemboi's modified monthly payments as an assignee of servicing rights from HomEq. Accordingly, this Court concludes that Ocwen is not entitled to summary judgment.

For these reasons, Ocwen's motion for summary judgment should be **DENIED**.

### C.     Plaintiffs' Partial Motion for Summary Judgment against Ocwen

The plaintiffs move for summary judgment on their claims against Ocwen for breach of the Modification Agreement (Count I), violations of the WVCCPA (Counts II and VI) and FDCPA (Count VIII), breach of the duty of good faith and fair dealing implied in the

Modification Agreement (Count XI), and specific performance of the Modification Agreement (Count XIV). As support for their motion, the plaintiffs argue that Ocwen has failed to present a genuine issue of material fact as to the validity of the Modification Agreement. This Court disagrees.

At least three undisputed facts preclude summary judgment in favor of the plaintiffs. First, although as an internal matter HomEq's vice president signed the Modification Agreement without Ms. Kiplagat's signature, HomEq never sent Mr. Kemboi a copy of the signed agreement. Second, even though HomEq accepted five of Mr. Kemboi's modified payments, HomEq sent the plaintiffs a notice of default letter dated August 16, 2010, claiming that they were delinquent. Third, according to its comment logs, HomEq rejected the modification as part of an audit of the plaintiffs' account following the return of the Modification Agreement. Based upon these undisputed facts, a reasonable juror could conclude that the Modification Agreement is not valid and enforceable. Accordingly, this Court concludes that the plaintiffs are not entitled to summary judgment.

For these reasons, the plaintiffs' motion for summary judgment should be **DENIED**.

### D. Mancini's Motion to Dismiss and Motion for Summary Judgment / Plaintiffs' Motion for Partial Summary Judgment Against Mancini

Mancini moves to dismiss and moves for summary judgment on the plaintiffs' WVCCPA and FDCPA claims because he acted on behalf of the substitute trustees, not as a debt collector. The plaintiffs move for summary judgment that Mancini is a debt collector subject to the WVCCPA and the FDCPA. For the reasons that follow, this Court concludes that Mancini did not act as a debt collector, but as an agent of the substitute trustees, and thus is entitled to summary judgment.

West Virginia Code § 38-1-3 provides, in whole, that:

The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section [§ 38-1-4].

Interpreting this language, the Supreme Court of Appeals of West Virginia has held that "the fiduciary duty owed by the trustee in a trust deed given as security in connection with a home mortgage loan does not require the trustee to review account records to ascertain the actual amount due prior to foreclosing . . .." **Lucas v. Fairbanks Capital Corp.**, 217 W.Va. 479, 488, 618 S.E.2d 488, 497 (2005). In that same case, the Supreme Court of Appeals also held that "nothing in the language of W.Va. Code § 38-1-3 . . . suggest[s] that a trustee has a duty to consider objections to the foreclosure sale." **Id.**

Mancini's involvement with the plaintiffs' loan was rather limited. On February 15, 2011, Mancini sent each plaintiff a letter titled "Notice Of Substitute Trustee Commencement Of Foreclosure Proceedings And Providing Contact Information Of Loan Servicer For Possibility of Resolution." The letters, which Mancini signed as "Agent for the Substitute Trustees," notified the plaintiffs that "Connie Kesner, Tressia Blevins, and Emmanuel B. Loucas, pursuant to [the] Deed of Trust, have been substituted as Trustees by the current beneficiary and are in the process of setting a sale date for a Trustee sale." The letters also informed the plaintiffs that they would "soon be receiving an official notice of that sale which is in compliance with West Virginia Law and the provisions of the Deed

of Trust." The plaintiffs thereafter each received a letter from Mancini dated February 23, 2011, informing them that their home had been scheduled for a foreclosure sale on March 18, 2011. These letters concluded in bold, "This is an attempt to collect a debt and any information obtained will be used for that purpose." Mr. Kemboi immediately responded by letter dated February 23, 2011, detailing the payments he had made and enclosing a copy of the Modification Agreement. Upon receipt of Mr. Kemboi's letter, Mancini contacted Ocwen to inform the servicer of Mr. Kemboi's contention that there was no default to prompt a foreclosure sale. The foreclosure sale was subsequently postponed in light of this litigation.

Based upon these undisputed facts, a juror could not reasonably conclude that Mancini acted as a debt collector subject to the WVCCPA and the FDCPA. Instead, a reasonable juror could conclude that Mancini acted in his capacity as an agent of the substitute trustees. In that capacity, Mancini had no duty to investigate whether a modification agreement purportedly entered into between one of the borrowers and an earlier servicer precluded foreclosure. Accordingly, Mancini is entitled to summary judgment.

For these reasons, Mancini's motion for summary judgment should be **GRANTED**, Mancini's motion to dismiss should be **DENIED AS MOOT**, and the plaintiffs' motion for summary judgment should be **DENIED**.

## CONCLUSION

For the foregoing reasons, this Court hereby **DENIES** the plaintiffs' Motion in Limine to Exclude Comment Logs of Prior Loan Servicer **[Doc. 97]**, **DENIES** Ocwen's Motion for Summary **[Doc. 99]**, **DENIES** the plaintiffs' Motion for Partial Summary Judgment **[Doc.**

20

**101]**, and **DENIES** the plaintiffs' Motion to Strike Declaration of Karen Stacey **[Doc. 104]**.

In addition, this Court hereby **DENIES AS MOOT** Mancini's Motion to Dismiss **[Doc. 81]**, **GRANTS** Mancini's Motion for Summary Judgment **[Doc. 92]**, and **DENIES** the plaintiffs' Motion for Partial Summary Judgment on the Issue of Defendant Mancini's Status as a Debt Collector **[Doc. 94]** .  Accordingly, the Clerk is **DIRECTED** to enter judgment in favor of defendants Daniel J. Mancini and Mancini & Associates and terminate those parties as defendants in this civil action.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED:** July 2, 2012.

GINA M. GROH
UNITED STATES DISTRICT JUDGE